### JOHNSON v. JOHNSON.

Court of Appeals of Kentucky.

Dec. 18, 1953.

Herschel M. Sutton, Corbin, for appellant.

C. B. Upton, Williamsburg, for appellee.

SIMS, Chief Justice.

Ray L. Johnson sued his wife for divorce in 1951 on the ground of cruel and inhuman treatment, consisting of alleged "perpetual nagging". He asked custody of their only minor child, Ray, Jr., 15 years of age. The answer was a denial followed by a counterclaim asking the custody of this boy and a monthly allowance of $200 for the support of the mother and son, but no divorce was sought. In May 1951, Hon. J. B. Johnson, then judge of the Whitley Circuit Court, dismissed the petition, adjudged the mother custody of the son and ordered the father to pay $175 per month for the maintenance of Mrs. Johnson and Ray, and gave them the use of the home and furnishings owned by the father.

On January 16, 1952, the father filed motion to have the chancellor reduce the allowance "to a sum within his ability to pay." In response to that motion the wife insisted the monthly allowance of $175 was insufficient for the support of herself and son and asked that it be raised to $190. Hon. W. L. Rose, who succeeded Judge Johnson in office, entered an order in February 1952, reducing the allowance to $125 a month and directing Mr. Johnson to pay $40 a month on a mortgage of $2,500 which a bank holds against his home occupied by the wife and son. Mrs. Johnson appeals from so much of the order as reduced her allowance from $175 to $125 per month.

The record in the whole case is before us and shows the parties were married in February 1921, and have three grown and married children in addition to their 15 year old son. Mrs. Johnson is in her early fifties, has no business training or occupation and is not in good health. The record does not show Mr. Johnson's age but it does show he has worked for the L. & N. R. R. Co., for 32 years and is a roundhouse foreman, earning $508 a month. His health is not good due to a "partial stroke to my left side and down my spine in 1949." On account of his physical condition Mr. Johnson can retire at any time on $120 per month. He owns a two-story eight room house in Corbin which has four bedrooms and two baths which is worth $8,000 or $10,000. This is the property occupied by Mrs. Johnson and Ray and upon which Mr. Johnson owes approximately $2,500.

Mr. and Mrs. Johnson are good people and have raised and educated a nice family. Each has testified fairly in this case, as have their children, all of whom sided with their mother but expressed no animosity towards their father. The problem of the Johnsons now is purely financial. Although Mr. Johnson makes $508 per month, it is not sufficient for the needs of the divided fam-

ily. At the time the proof was taken in April 1951, Ray was 15 years of age, a sophomore in high school and was under the care of a physician for an allergy and of a dentist to straighten his teeth.

Courts in fixing the amount of alimony, or the amount of a monthly allowance to the wife, take into consideration the value of the husband's estate.; his income, earning capacity and his age, health and ability to work; the age, health and and station in life of the wife; the particular cause of the divorce and the relative responsibility of the parties therefor; whether the wife has helped in accumulating the husband's property; and all other relevant circumstances. Kelly v. Kelly, 179 Ky. 586, 200 S.W. 925; Lockard v. Lockard, 305 Ky. 656, 205 S.W.2d 317. The chancellor's judgment showed he applied this rule and we are convinced that he reached the right conclusion.

Mrs. Johnson in listing her necessary monthly expenses gives these items: allowance to the son of $20; typewriter payment of $6.75; telephone $3.54; and the boy's dry cleaning at $5. We hardly think these items are necessary for a 15 year old boy. Besides, Ray while in high school could earn enough for these incidentals, or at least a material part thereof. Many boys of his age in families in financial straits earn all their spending money and even enough to clothe themselves. The record shows that a daughter of the parties, Mrs. Mary Elizabeth Dunn, is divorced from her husband and has three children and she is living in the home with her mother and brother. Mrs. Dunn bears part of the grocery bill. It seems that Mrs. Johnson should be able to supplement her monthly allowance by renting part of this home or rooms in it. There is no legal obligation upon Mr. Johnson to furnish shelter for his divorced daughter.

Deductions of $115.70 from Mr. Johnson's salary of $508 leave his "take home pay" of $392.30. Then he must pay monthly these sums: $40 on the mortgage; room and meals $115; payments on and expenses of operating a car, since he is not able to walk to work, $60; clothing and dry cleaning $15; insurance on home $1.50. These items total $231.50 per month which deducted from his "take home pay" of $392.30 leaves $160.80. When the allowance of $125 is taken therefrom, there is a balance of $35.80 left Mr. Johnson for incidentals such as barber, cigarettes, drugs and amusements, which is rather small for a man earning a gross of $508 per month.

We think the chancellor made no mistake and his judgment is affirmed.